# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Criminal Action Number** |
| ) | **09–00058-01-CR-W-NKL** |
| **Russell Lee Singletary,** ) | |
| ) | |
| **Defendant.** ) | |

## Report and Recommendation

Pending before the Court is Defendant Russell Lee Singletary's *Motion To Suppress,* filed July 21, 2009 [Doc. # 20]. On September 16, 2009, the undersigned held an evidentiary hearing on the defendant's motion. Defendant Russell Lee Singletary ("Singletary") was present and was represented by his counsel, Assistant Federal Public Defender Laine Cardarella. The government was represented by Assistant United States Attorney Mike Green. At the evidentiary hearing, the government called Missouri State Highway Patrol Trooper Adam Rice ("Trooper Rice") and Federal Bureau of Investigation Special Agent Kurt Lipanovich ("Special Agent Lipanovich) as witnesses. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| 1. | Bank surveillance photo - 12/1/08 |
| 2. | Bank surveillance photo - 12/01/08 |
| 8. | Photo of Ford Thunderbird |
| 10. | Photo of blue coveralls |
| 11. | Photo of blue coveralls |

|     |     |     |
| --- | --- | --- |
| | 12. | Photo of tan boots |
| | 13. | Photo of tan boots |
| | 14. | Photo of glove box in Ford Thunderbird |
| | 15. | Photo of yellow plastic sack in glove box |
| | 16. | Photo of yellow plastic sack |
| | 17. | Photo of U.S. currency inside plastic bag |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On February 9, 2009, at approximately 4:15 p.m., Missouri State Highway Patrol Trooper Rice was on patrol of Interstate 29 ("I-29") approximately 16 miles north of St. Joseph, Missouri when the radio dispatcher informed him that a bank in St. Joseph had just been robbed by an older, heavyset black male driving a 1970 tan Ford Thunderbird with Kansas license plates PPL642. Tr. 4-7, 30

2. Trooper Rice kept a lookout for an older model tan Thunderbird because he believed a 1970 Ford Thunderbird to be a "classic" vehicle and thought it unlikely that the model year given by the witness was accurate. Tr. 8, 31-32

3. Trooper Rice traveled to the crossover at approximately 34 miles north of St. Joseph and positioned his patrol car to face traffic traveling northbound on I-29. Tr. 7.

4. At 5:06 p.m., Trooper Rice saw a tan 1994 Ford Thunderbird with Iowa license plates being driven by a heavyset black male headed north on I-29. Tr. 9-11, 31

5. Trooper Rice activated his overhead lights and pulled behind the Thunderbird in the right lane. Tr. 11

6. The Thunderbird did not immediately pull over but instead changed to the left lane. Tr. 11

7. Trooper Rice activated his siren and followed the Thunderbird for approximately two miles in the left lane before the driver changed to the right lane and then pulled over on the shoulder of I-29. Tr. 11

8. Trooper Rice exited his vehicle and walked up to the driver's side window of the Thunderbird where he asked for and received the driver's license and vehicle registration. Tr. 12-13

9. While standing at the driver's window, Trooper Rice saw a pair of tan work boots and blue coveralls on the backseat floorboard. Tr. 14-15

10. Trooper Rice asked the driver (identified as Singletary) to have a seat inside the patrol car and that he would explain why after they were in the patrol car. Tr. 16

11. Before Singletary got into the patrol car, Trooper Rice asked for and received consent to pat Singletary down for weapons for officer safety reasons. Tr. 15-17

12. While Singletary was in the front passenger seat of the patrol car, Trooper Rice asked for consent to search the Ford Thunderbird. Tr. 19

13. When Singletary asked why the trooper wanted to search his vehicle, Trooper Rice responded that he would search for evidence of a bank robbery and if he found it he would further the traffic stop, and if not, Singletary would be free to go. Tr. 19

14. Singletary gave permission to search the trunk, but refused to consent to a search of the interior of the vehicle. Tr. 19-20

15. Trooper Rice asked Singletary if he robbed the bank in St. Joseph. Tr. 20, 28

16. Singletary did not respond but turned away and looked out the passenger side window. Tr. 20, 28

17. Trooper Rice exited the vehicle, went around to the passenger side, opened the door and advised Singletary of the Miranda warning and that he would be placed in handcuffs for safety reasons but that he was not under arrest. Tr. 20

18. Singletary asked to retrieve his wallet from the vehicle. Trooper Rice told him he was not going to go back to his vehicle and placed Singletary in handcuffs and returned him to the passenger seat of the patrol car. Tr. 21.

19. At approximately 5:43 p.m., as a result of information transmitted to dispatch by Trooper Rice while following the tan Thunderbird earlier, Special Agent Lipanovich arrived at the scene of the traffic stop. Tr. 22-23

20. On December 1, 2008, barely over two months prior to the February 9, 2009 robbery, the same bank – U S Bank – and same teller – Judy Reed ("Reed") – were robbed by a heavyset black male. Tr. 40-41

21. When Lipanovich responded to the U S Bank at approximately 4:20 p.m. on February 9, 2009, Reed told him that she believed the same man had robbed her again. Tr. 43

3

22. Special Agent Lipanovich secured the bank surveillance photos from both the December 1, 2008 and February 9, 2009 armed robberies and concluded that the same individual was shown in both sets of photos. Tr. 44-45

23. While at the U S Bank, on February 9, 2009, Special Agent Lipanovich learned that Trooper Rice had a person of interest stopped on I-29. Tr. 47

24. Special Agent Lipanovich traveled quickly to the scene and spoke briefly with officers there who told him to take a look at the blue coveralls and tan workboots which were clearly visible in the back of Singletary's vehicle. Tr. 50

25. Special Agent Lipanovich knew from the bank surveillance photos and Reed that the robber had worn blue coveralls and tan workboots. Tr. 50

26. Special Agent Lipanovich observed Singletary in the front seat of the patrol car and believed him to be the same individual depicted in the bank surveillance photos. Tr. 50

27. Special Agent Lipanovich advised Singletary of his *Miranda* rights, spoke briefly with him about cooperating until Singletary invoked his right to counsel and then arrested Singletary for armed bank robbery.

28. After Singletary was placed under arrest, the tan Ford Thunderbird was searched and numerous items of evidence – including the robbery proceeds – were recovered. Tr. 53-55

29. No law enforcement officers entered or searched the vehicle until after Singletary was placed under arrest. Tr. 23

## PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[1] papers, and effects, against unreasonable searches and seizures, shall not be

---

[1] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Undoubtedly, many [people] find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the

4

violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the Constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In this case, the interactions between Singletary and law enforcement officers potentially raise Fourth Amendment issues at several junctures. Based on Singletary's *Motion to Suppress*, he specifically questions the propriety of the initial stop, the length of his detention at the traffic stop, and the ensuing search of his vehicle after he was arrested.

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion –

---

Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

5

supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884-85.  However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883.  Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u> dispositive for a constitutional analysis; rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

The concept of "reasonable suspicion" is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329 (1983).  In large part, common sense dictates the analysis of reasonable suspicion.

> The process does not deal with hard certainties, but with probabilities.  Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviors; jurors as fact-finders are permitted to do the same and so are law enforcement officers.

*United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695 (1981).  As such, in evaluating the validity of a *Terry* stop, "the totality of the circumstances – the whole picture" must be considered.  *Id*. at 417, 101 S.Ct. at 695.

In the present case, when Trooper Rice pulled over Singletary's vehicle at 5:06 p.m., he had been informed at 4:15 p.m. that a bank in St. Joseph had just been robbed by an older heavyset black male who was seen leaving the bank in a 1970 tan Ford Thunderbird with Kansas license plates bearing "PPL642."  Armed with this information,  Trooper Rice pulled over Singletary (a heavyset black male who was 55 years old at the time).  Singletary was driving north on I-29 (*i.e.*, away from St. Joseph) in a tan 1994 Ford Thunderbird with Iowa license

6

plates. Admittedly there are discrepancies between the information Trooper Rice heard about the model year of the Thunderbird and license plate and Singletary's vehicle with Iowa plates. The law, however, only requires that Trooper Rice have "reasonable suspicion" not certitude. The Eighth Circuit has previously found that *Terry* stops are valid where a suspect is a "close match" to the description of the perpetrator. *See*, *e.g.*, *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006); *United States v. Polk*, 97 F.3d 1096, 1099 (8th Cir. 1996). While Trooper Rice certainly did not have probable cause to arrest Singletary when he pulled him over, he was armed with sufficient facts to provide an appropriate level of <u>objective</u> justification that criminal activity might be afoot.

Once Trooper Rice initiated a proper *Terry* stop, he was thereafter justified in taking "such steps as [were] reasonably necessary to protect [his] personal safety and to maintain the status quo during the stop. *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006) (*quoting United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). To that end, the Eighth Circuit has found that an officer conducting a *Terry* stop of a vehicle may remove a suspect from his vehicle, may place a suspect in a patrol car, and may even handcuff the suspect without violating the Fourth Amendment. *Id*. Nonetheless, it is well settled that "[a]n investigative detention may turn into an arrest if it 'lasts for an unreasonably long time or if officers use unreasonable force.'" *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) (*quoting*, *in part*, *Navarrete-Barron*, 192 F.3d at 790). However, in this case, the Court does not find that the stop was unreasonably long.[2] *Compare United States v. Bloomfield*, 40 F.3d 910, 913 (8th Cir.

---

[2] The length of the traffic stop was not unreasonable based just on the original information received by Trooper Rice. However, it is also recognized that if the officer's suspicions become heightened during the course of such routine investigation, the officer may be

7

1994) (finding that a one hour delay between a traffic stop and an arrest "was not an unreasonable period to wait for a drug dog")

Finally, with regard to the search of Singletary's car following his arrest, the government argues that the search was a valid search-incident-to-an-arrest. The Supreme Court recently examined this issue. *Arizona v. Gant*, — U.S. –, 129 S.Ct. 1710 (2009).

In *Gant*, law enforcement officers stopped a man for driving with a suspended license. After the man was arrested, handcuffed, and placed in a patrol car, the officers searched his vehicle and found cocaine in the vehicle. The man was charged with possession and was convicted. Eventually appealing to the Supreme Court, the man argued that the search of his vehicle had improperly exceeded the scope of a permissible search-incident-to-an-arrest. The *Gant* court agreed with the man and found that law enforcement officers are authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at —, 129 S.Ct. at 1719.

Had the Supreme Court merely stopped at that point, Singletary might have a meritorious argument regarding the search of his vehicle (which occurred after he was handcuffed and placed in a patrol car). However, the *Gant* court when on to state:

---

justified in expanding the scope of the investigation. *Id.* More specifically:

> If during a traffic stop, an officer develops a reasonable, articulable
> suspicion that a vehicle is carrying contraband, he has justification
> for greater intrusion unrelated to the traffic offense.

*United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994). In this case, Singletary's refusal to pull over his vehicle when Trooper Rice activated his lights and his behavior during the stop are further justification for some prolonging of the initial stop.

8

> [W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others . . . the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Id*. (*quoting*, *in part*, *Thornton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 2137 (2004) (Scalia, J., concurring)). In this case, in light of Singletary's arrest for bank robbery, the officers were justified in searching his vehicle incident to his lawful arrest notwithstanding the fact that he did not have access to the vehicle at the time of his arrest.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Defendant's *Motion To Suppress,* filed July 21, 2009 [Doc. # 20].

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

       */s/ John T. Maughmer*
       **John T. Maughmer**
       **Chief United States Magistrate Judge**

9

Case 4:09-cr-00058-NKL   Document 32   Filed 10/15/09   Page 9 of 9